FILED
2011 AUG 26 PM 3:09
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ______ DEPUTY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

**EMTEL, INC.; JOSEPH DEGIOANNI, M.D.; and BRAZOS EMERGENCY PHYSICIANS ASSOCIATION, P.A.,**
**Appellants,**

**-vs-** **Case No. A-11-CA-399-SS**

**PATRICK G. WOODS, M.D.; DIANA FITE, M.D.; STEVE MATTI, M.D.; LEEOR PELEG, D.O.; GEORGE SIMONS, D.O.; and UNITED STATES TRUSTEE - AU12,**
**Appellees.**

# ORDER

BE IT REMEMBERED on the 30th day of June 2011, the Court held a hearing in the above-styled cause, specifically to consider Appellants Emtel, Inc., Joseph Degioanni, M.D., and Brazos Emergency Physicians Association, P.A. (collectively "BEPA")'s appeal of the order of the United States Bankruptcy Court for the Western District of Texas, specifically the February 15, 2011Order Granting Motion to Dismiss and dismissing the bankruptcy case concluding that it was filed in bad faith. At the oral argument before this Court, all parties were represented by counsel. After considering the arguments of counsel at the hearing, the parties' briefs, the appellate record, the case file as a whole and the applicable law, the Court enters the following opinion and order.

## Background

This case involves a long-running business dispute among physicians. Prior to BEPA seeking protection under Chapter 11, it was under two, successive receiverships in state court extending from 2004-early 2010 while its directors, former employees, and other parties in interest brought claims

and counterclaims against each other in two separate state court cases. Specifically, Appellees have been pursuing claims against Dr. Degioanni, BEPA's original president, and Emtel, Inc., a company Degioanni also owns. Appellees essentially believe Degioanni has been siphoning money out of BEPA through Emtel. Two state court lawsuits were filed as a result of that dispute: (1) a derivative action filed by Dr. Woods, and in which Dr. Fite and the other Appellees later intervened as additional derivative plaintiffs, styled *Dr. Patrick G. Woods vs. Joseph Degioanni, Emtel, Inc., and Brazos Emergency Physicians Association, P.A.*, Cause No. 2003-53712, in the 334th District Court of Harris County, Texas, and (2) a suit styled *Emtel, Inc., et al. vs. Medford Cashion, MD., et al.*, Cause No. 2003-69942, in the 152nd Judicial District Court of Harris County, Texas, which Dr. Degioanni filed against BEPA's other directors after they voted to remove him as BEPA's president. At a hearing on other matters in that suit, the parties decided to ask the district court to appoint a receiver for BEPA.

BEPA had operated as debtor-in-possession from the time of filing on March 22, 2010. On May 11, 2010, BEPA filed an adversary proceeding against Appellees seeking a declaratory judgment with regard to the ownership of claims brought in state court as shareholder derivative claims. Appellees, on June 29, 2010, after receiving an extension of time to file, filed a motion to dismiss the adversary proceeding and simultaneously filed a motion to dismiss the bankruptcy for bad faith. The bankruptcy court conducted an exhaustive evidentiary hearing over the course of two full days-August 27, 2010 and September 23, 2010. Bankr. Dkt. # 130, 131. After some delay, the bankruptcy court dismissed the case orally on February 11, 2011 and issued a written order on February 15, 2011.

The bankruptcy court dismissed BEPA's Chapter 11 case due to bad faith. The court found (1) "the only purpose for filing was to gain control of the litigation in the state court proceedings and force an outcome;" (2) insufficient evidence that BEPA will be unable to function without bankruptcy; (3) the creditor body is limited and most claims are held by insiders or affiliates; (4) determination of most of the issues related to this case are already pending in state court and properly belong there; (5) there is no proof that dismissal will result in the end of BEPA, and (6) there was no legitimate financial pressure on BEPA to seek bankruptcy protection. In short, the bankruptcy court found the financial issues involved in the state court litigation were not the cause of the filing, rather it was "the animosity between the respective doctors." Tr. at 27-28.

**Analysis**

## I. Issue Presented on Appeal

Appellants present one issue on appeal: did the bankruptcy court abuse its discretion by dismissing the bankruptcy case of BEPA on the grounds that it was filed in bad faith? BEPA argues the Bankruptcy Court clearly erred when it found the primary purpose of BEPA's bankruptcy case was to gain control of the state court litigation and force a favorable outcome. Rather, BEPA asserts it was functionally insolvent and was on an unsustainable course. BEPA also argues the bankruptcy court failed to account for BEPA's competency operating as debtor-in-possession for nearly a year from filing until dismissal. BEPA also asserts the court should have allowed the case to proceed to a confirmation hearing before evaluating whether the plan was proposed in bad faith.[1]

[1]BEPA also asserts appellees waited too long to request dismissal. There is no explicit deadline to file a motion to dismiss a bankruptcy case. *See* 11 U.S.C. § 1112. In addition, Appellants never opposed dismissal on the basis of tardiness and thus have waived this argument on appeal. *See In re Commodity Exchange Services Co.*, 67 B.R. 313, 315 (N.D. Tex. 1986) ("As an appellate court in this[bankruptcy] matter, the Court will not consider this issue which is raised for the first time on appeal.").

## II. Standards of Review

This appeal is taken pursuant to 28 U.S.C. § 158(a). In such an appeal, "[a] bankruptcy court's findings of fact are reviewed under the clearly erroneous standard, and its conclusions of law are reviewed de novo." *In re El Paso Refinery*, 171 F.3d 249, 253 (5th Cir. 1999). The bankruptcy court's determination that BEPA filed its bankruptcy petition in bad faith is a finding of fact that this Court reviews only for clear error. *See In re Humble Place Joint Venture*, 936 F.2d 814, 816 (5th Cir. 1991) ("We review the bankruptcy court's decision to dismiss for abuse of discretion, reversing its findings of fact only if they were clearly erroneous. The court's finding that Humble Place's Chapter 11 petition was not filed 'in good faith' is one of fact."). A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing Court is left with the definitive and firm conviction that a mistake was committed after reviewing all the evidence. *Flint Hills Res. LP v. Jag Energy, Inc.*, 559 F.3d 373, 375 (5th Cir. 2009).

### A. Bad Faith

The filing of a bankruptcy petition in bad faith constitutes a valid basis for dismissal of the petition under 11 U.S.C. § 1112. *See In re Mirant Corp.*, No. 03-46590, 2005 WL 2148362, at *5 (Bankr. N.D. Tex. Jan. 26, 2005). ("Lack of good faith is not one of the enumerated examples in section 1112(b ), but many courts have held that lack of good faith is appropriate cause for dismissal under that section."); *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986) (noting that dismissals pursuant to § 1112(b) may be predicated upon "[f]indings of lack of good faith").

The factors employed in the Fifth Circuit in determining whether a bankruptcy case is filed in bad faith are set forth in the *Little Creek* case. *Little Creek Development Co. v. Commonwealth Mortgage Corp.* (*In re Little Creek Development Co.*), 779 F.2d 1068 (5th Cir. 1986). There, the

Fifth Circuit held, "[f]indings of lack of good faith in proceedings based on §§ 362(d) or 1112(b) have been predicated on certain recurring but non-exclusive patterns, and they are based on a conglomerate of factors rather than one any single datum." *Id.* at 1072. The Court then listed a series of factors which are typically present in bad faith filings: (1) the debtor has only one asset such as a tract of land; (2) the debtor has few unsecured creditors whose claims are small in relation to the claims of the secured creditors; (3) the debtor has few employees; (4) the debtor's property is the subject of a foreclosure action as a result of arrearages on the debt; (5) the timing of the debtor's filing evidences an attempt to delay or frustrate the legitimate efforts of Debtor's secured creditor to enforce its rights; (6) there are allegations of wrongdoing by the debtors or its principals. *Id.* at 1073. These are not the only factors to be considered, because "the existence of good faith depends on an amalgam of factors and not upon a specific fact. The bankruptcy court should ex-amine the debtor's financial status, motives, and the local economic environment. . . . Good faith is lacking only when the debtor's actions are a clear abuse of the bankruptcy process." *Idaho v. Arnold (In re Arnold)*, 806 F.2d 937, 939 (9th Cir. 1986) (citing, in part, *Little Creek*, but internal citations omitted).

**B. Bankruptcy Court Findings**

The bankruptcy court concluded that BEPA filed its bankruptcy petition in bad faith because the petition was an obvious "litigation tactic" calculated to "second-guess what the State Courts have . . . done" in adjudicating Appellees' right to control the claims they prosecute derivatively on BEPA's behalf. Bankr. Tr. at 28-29. The court continued, stating "the petition here was not filed in good faith to effectuate reorganization. Rather it was filed in an attempt to wrest control of litigation away from the state court." *Id.* at 30.

Merely obtaining a litigation advantage by pursuing bankruptcy is not dispositive of bad faith, but when a bankruptcy court finds a party pursues bankruptcy *for the purpose* of securing a litigation advantage in another forum, such intent is dispositive: it establishes bad faith and necessitates dismissal. *See, e.g., In re Silberkraus*, 253 B.R. 890, 905 (Bankr. C.D. Cal. 2000) ("[I]t constitutes bad faith to file bankruptcy to impede, delay, forum shop, or obtain a tactical advantage regarding litigation ongoing in nonbankruptcy forum . . . ."). This is what the bankruptcy court found in this case—BEPA filed its bankruptcy petition for the purpose of obtaining a litigation advantage. Indeed, there is sufficient evidence BEPA sought bankruptcy protection in order to take control of the derivative claims Appellees are pursuing in the state court litigation and settle those claims for a minimal amount the receivership court had refused to approve.[2]

During the course of a two-day hearing, BEPA presented evidence to try to refute this conclusion. However, as the bankruptcy court noted, its arguments and evidence were simply a repeat of previous arguments BEPA made, and lost, in state court. Bankr. Tr. at 28. Other than copies of its own bankruptcy pleadings, virtually every exhibit BEPA offered into evidence at the hearing on Appellees' motion to dismiss was also an exhibit that BEPA submitted to the state court in support of its various unsuccessful motions to disqualify Dr. Fite and Dr. Woods as derivative plaintiffs and take control of their claims. Ex. 51. The bankruptcy court properly determined that this constituted bad faith necessitating dismissal.

The bankruptcy court further predicated its determination that BEPA filed its bankruptcy petition in bad faith on the factual determination that BEPA's financial condition did not warrant

---

[2]Indeed, if the derivative claims against Degioanni were wiped out, the counterclaims against appellees would remain, so filing bankruptcy gives Degioanni the chance to win twice.

bankruptcy protection and that BEPA's request for such protection was "orchestrated without any creditor pressure." Bankr. Tr. at 28. "We have no foreclosures pending. We don't have any threatened action against Debtors." *Id.* Appellants direct the Court to no evidence showing this conclusion was clear error. Instead, Appellants offer only assertions that BEPA was "functionally insolvent" when it filed for bankruptcy and that it "owed approximately $130,401.97 to non-insider creditors" which it "could not reasonably pay." App. Br., at 10, 16. In reality, as discussed below, the evidence establishes the contrary and supports the decision of the bankruptcy court.

BEPA's Statement of Financial Affairs indicates, in the three years preceding its bankruptcy filing, BEPA's yearly revenues increased by approximately $200,000. Ex. 7, Statement of Financial Affairs. The monthly reports BEPA filed since initiating the bankruptcy demonstrate BEPA has turned a profit since filing its bankruptcy petition. Exs. 14-16. According to its Claims Register, BEPA has extremely limited secured debt, consisting of $28,546.15 to Texas Citizens Bank, and $77.64 to Harris County. The non-insider unsecured claims are limited to: Internal Revenue Service $1,000.00; Chamberlain Hrdlicka $49,306.76; Marshall & McCracken, PC $43,815.00; Moore, Reichl & Baker, PC $3,184.94; and James Ferguson, MD $4,471.48. Bankr. Dkt. #26.

The only other alleged financial pressure Appellants claim BEPA faces is "$900,000 in fees that it would owe to its former Receiver," James Raymond. App. Br., at 10. As Appellees acknowledge, however, under long-established Texas law, any fees to which the Receiver might be entitled must be approved by the court that appointed him. App. Br., at 10; *see e.g.*, *Taylor v. Taylor*, 91 S.W.2d 394, 398 (Tex. Civ. App.—Amarillo 1936, no writ). In addition, the petition listed Degioanni and Emtel as BEPA's largest creditors (despite the original derivative suit claiming Degioanni and Emtel had misappropriated millions from BEPA). Of the total unsecured claims of

$895,290.39, Degioanni and Emtel claimed to own $838,327.21 (93.64% of the unsecured debt used to justify bankruptcy filing). As the bankruptcy court indicated, "if you extract all the insider claims, and all the contested claims, the unsecured debt in this case is less than $100,000. Thus, it is clear that the bankruptcy court did not err in finding "the financial issues that are involved in this litigation are not the cause of the Chapter 11 filing. It's the animosity between the respective doctors." Bankr. Tr. at 28.

Appellants assert "even a cursory review of the history of eight years of state court litigation" demonstrates that BEPA did not file bankruptcy to "gain a litigation advantage." App. Br. at 13. However, a full review of the history of the state court litigation shows by attempting to deprive Appellees of standing and to settle the state court case, which settlement was not approved in the state court case, the Appellants were certainly seeking a litigation advantage in filing, and in fact there is no other legitimate explanation for the filing, considering the lack of financial pressure.

Appellants respond claiming "BEPA has not and will not attempt to remove the state court litigation to bankruptcy court." App. Br. 15. As the Court explained above, this is irrelevant. There would be no need to remove the state court litigation to bankruptcy court if BEPA succeeds in taking control of the derivative case. Finally, Appellants insist "BEPA has the ability to effectuate a plan of reorganization." App. Br., at 15. The bankruptcy court found there was "really no reorganization process to undertake in this case . . . [because] the petition here was not filed in good faith to effectuate reorganization." Bankr. Tr. at 30. The Court has little doubt BEPA could implement its proposed plan of reorganization if the bankruptcy court permitted it to do so. However, the mere fact that a bankruptcy petitioner is capable of carrying out a plan of reorganization in no way establishes that its petition for permission of the bankruptcy court to do so is in good faith. Here, the bankruptcy

court found BEPA was asking for its plan to be implemented simply so that it could take control of the derivative claims and settle them cheaply. *Id.* at 28-30. Thus, BEPA's ability to effectuate its reorganization plan, far from establishing BEPA's good faith, rather demonstrates it sought bankruptcy protection in bad faith to secure a litigation advantage in state court proceedings.

In short, the record shows no legitimate reason for BEPA to seek bankruptcy. Instead, it is clear the bankruptcy was sought solely to gain control of litigation pending in the state court. Thus, the bankruptcy court did not err in dismissing the case due to bad faith filing.

**C. BEPA's Survival**

Appellants present one further argument based on an alleged legal conclusion of the bankruptcy court. In short, they argue the bankruptcy court erred in dismissing the bankruptcy since the court also recognized BEPA would not survive the state court litigation. Specifically the bankruptcy court stated:

> [T]here's little, if any, proof that dismissal of this case will result in the end of BEPA. While I heard assertions to that effect, I find that the evidence is unconvincing or unavailing that it's the bankruptcy case, if it's dismissed, that will cause the demise of BEPA. Gentlemen, the demise of BEPA is going to be caused by the State Court litigation, which has been ongoing for many years.

Tr. at 27-28. Appellants note there is some authority that where a court knows that a debtor would not survive litigation if a bankruptcy case was dismissed, dismissal is an abuse of discretion. *See Wynco Distributors, Inc. v. Wynn (In re Wynco Distributors, Inc.)*, 126 B.R. 131, 134 (Bankr.D.Mass. 1991).

There is also authority, however, that when a party pursues bankruptcy for the purpose of securing a litigation advantage in another forum, this intent alone establishes bad faith and

necessitates dismissal, regardless of a debtor's likelihood of survival in other litigation. *See e.g., In re Silberkraus*, 253 B.R. 890, 905 (Bankr. C.D. Cal. 2000).

It is unclear why the bankruptcy court made the second part of the above statement, however in the context of the transcript as a whole, it appears simply to be more of an editorial comment from the court on the fact that there have been over eight years of litigation in state court ongoing, and so if BEPA does eventually cease to exist, it will not be because it goes bankrupt, but due to unfavorable state court decisions. There is legal authority on both sides of this issue, none of it binding on this court or the bankruptcy court. Thus, the Court cannot say this single comment by the bankruptcy court indicates an abuse of discretion in the bankruptcy court's application of the law.

**Conclusion**

There is evidence in the record of bad faith and evidence against such a finding, but the bankruptcy court did not clearly err in finding bad faith. Instead the court was persuaded the main purpose of the filing was to gain a litigation advantage and the filing was orchestrated without any creditor pressure. This constitutes sufficient bad faith to warrant dismissal and the bankruptcy court did not err in finding as much. Thus, in accordance with the foregoing:

IT IS ORDERED that the order of the United States Bankruptcy Court for the Western District of Texas dismissing BEPA's bankruptcy in case No. 10-10737 is AFFIRMED.

SIGNED this the 26th day of August 2011.

Sam Sparks

SAM SPARKS
UNITED STATES DISTRICT JUDGE